JOHN K. SUMNER *v.* A. PERRY, First Judge of the Circuit Court of the First Judicial Circuit, and J. A. KING, Receiver of the Estate of John K. Sumner.

PETITION FOR A WRIT OF PROHIBITION.

ORIGINAL JURISDICTION.

SUBMITTED FEBRUARY 14, 1898.      DECIDED MARCH 28, 1898.

JUDD, C.J., WHITING, J., AND L. A. DICKEY, ESQ., A MEMBER OF THE BAR, IN PLACE OF MR. JUSTICE FREAR, DISQUALIFIED.

A Circuit Judge had jurisdiction to entertain a bill in equity filed by the next friend of a person, one J. K. S., alleged to be *non compos*, though not under guardianship, he being without the Republic, the object of the bill being to cancel certain instruments in writing affecting said J. K. S.'s property alleged to have been procured by fraud. The Court had also the power to appoint a receiver of the property of the said J. K. S., it deeming it necessary under the circumstances. The Judge decreed the relief prayed for. The object of the bill being accomplished the receiver should be discharged, and the Court orders the writ of prohibition so far as it forbids the court to act further, to be made perpetual.

OPINION OF THE COURT BY JUDD, C.J.

This is an application filed February 1, 1898, by John K. Sumner for a writ of prohibition directed to the First Judge of the Circuit Court, First Circuit, and J. A. King, receiver of the estate of the said Sumner, forbidding them to proceed further upon an order made in the case of John K. Sumner, a *non compos mentis*, by his next friend, *v.* one M. F. Crandell, ap-

pointing the said J. A. King receiver. The writ was issued and the motion to make it absolute was heard by us on the 14th February last in vacation. The petition alleges that on February 19, 1895, the petitioner was out of the Republic and beyond seas. That on that date, without notice to petitioner, a bill in equity entitled "J. K. Sumner by his next friend Maria S. Davis *v.* M. F. Crandell," was filed and leave given said Maria S. Davis by the Second Judge of the Circuit Court to prosecute said suit as the next friend of the petitioner; the bill purported to be "the bill of J. K. Sumner, a *non compos mentis,* by Maria S. Davis his sister and next friend," showing as follows:

1.   That the plaintiff now residing in the State of California, is about 74 years of age and is the owner of a large amount of valuable real estate and property in the Hawaiian Islands, to wit, of the value of $100,000.

2.   "That the mind and memory of the plaintiff have for some time been failing, and that he is now and for some months last past has been unable to understand his affairs and to intelligently transact business."

3.   The bill goes on to aver in substance that the defendant, "by appealing to the prejudices of the plaintiff and by false representations and by other wicked and corrupt practices has obtained complete control over the plaintiff, and that by the means of said false representations and wicked and corrupt practices, the defendant on the 23d day of December, 1894, induced the plaintiff to give him a power of attorney," being a very general power, for collecting money, bringing suit for the same, selling, purchasing, leasing and mortgaging lands, mortgaging and in any way dealing in goods and other property. (This power of attorney, which was subsequently filed and is now part of the record, appears to be one of the general printed forms used in California).

4.   That said next friend is informed and believes "that the said defendant is making leases and doing other acts under said power of attorney that are prejudicial to the best interests of the plaintiff and is negotiating and dealing with the

property of the plaintiff in a manner that will bring loss, disaster and ruin upon the plaintiff."

5.   That defendant is a person without property and could not respond in damages for any claims that plaintiff might have against him by reason of his improper actions and mismanagement of plaintiff's property under said power of attorney.

6.   "That by fraudulent representations, intimidation, deceit and duress, made, exercised and practiced by the defendant on the plaintiff, the plaintiff was induced to leave the Hawaiian Islands in great haste for California upon the 8th day of February, 1895," and is compelled by the same means to remain away.

7.   That said next friend and also plaintiff's family were ignorant that defendant had obtained said power of attorney and of the power and control that the defendant had acquired over the plaintiff, and had no knowledge of the proposed departure of the plaintiff until it was too late to prevent the same.

The bill prays "that J. A. King be appointed receiver for the estate of plaintiff with power to take, collect and receive all rents, issues and profits of the estate and property of the plaintiff."

That said power of attorney be revoked and defendant ordered to produce the same in court for cancellation, with all documents, papers and title deeds in his possession or under his control relating to the estate and property of the plaintiff. For discovery and account and for injunction against defendant's transacting any further business under said power of attorney.

The bill is signed by "Maria S. Davis," ("J. Alfred Magoon, Solicitor for the plaintiff,") and is sworn to by Maria S. Davis. Summons was issued February 19, 1895, on the bill, together with an injunction as prayed for.

Defendant's answer dated March 4, 1895, denies that the mind or memory of Sumner had been failing or that he was unable to understand his affairs or to transact business intelligently, or that defendant had appealed to his prejudices or

made any false representations or used other or any wicked or corrupt practices, or thereby obtained any control over Sumner, or induced him thereby to give the power of attorney, or that under the power of attorney he was making leases or doing other acts prejudiced to Sumner's best interests, or that Sumner was induced to leave the Hawaiian Islands by defendant's fraudulent representations, etc., or that he was thereby compelled to remain away.

Messrs. Castle and Neumann appeared for defendant.

The respondents answered. The Circuit Judge, after evidence and argument, decided on September 30, 1896, that the power of attorney and agreement for compensation were fraudulently obtained and null and void, and ordered their cancellation and appointed, on motion of counsel for plaintiff, J. A. King permanent receiver of the estate of J. K. Sumner and his property in the Hawaiian Islands until further order of the court with power, &c. Mr. King filed his bond and acted as receiver. In October, 1897, Sumner having returned from Tahiti in the month of January previous, moved the Circuit Judge to discharge the receiver on the ground that the court appointing the receiver had never acquired jurisdiction over his person and estate and had no jurisdiction to appoint a receiver and if it had, no reason existed for continuing his services, and that Mr. Sumner was of sound mind and capable of managing his own estate. Meanwhile the receiver had, with the authority of the court appointing him, brought some suits in reference to Mr. Sumner's property and had defended others.

After various proceedings the matter now stands that the receiver, signifying his willingness to resign his trust, filed his accounts as such which were referred to a master who reported thereon, but the accounts were not passed upon by the court. Meanwhile a petition to appoint a guardian over the person and estate of John K. Sumner was filed in the Probate Court upon which various interlocutory pleas and motions were made, and finally on the 10th December, 1897, the court decided to proceed no further in the matter of the discharge of the receiver

until the matter of the petition for the appointment of a guardian should be determined. While not giving all the details of this litigation we consider that we have referred to it sufficiently to an understanding of the question of the propriety of making the writ of prohibition perpetual.

The statute authorizing the writ is as follows:

"Section 15. This is a mandate which issues in the name of the sovereign from the Supreme Court in term, or from any Justice thereof in vacation, directed to the judge and the party suing in any inferior court, forbidding them to proceed any further in the cause, on the ground that the cognizance of the said cause does not belong to such court, or that the cause or some collateral matter arising therein is beyond its jurisdiction, or that it is not competent to decide it."

We are of opinion that the Circuit Judge had at chambers jurisdiction to entertain the bill of J. K. Sumner, a *non compos mentis*, by his next friend Maria S. Davis, against M. F. Crandell, to cancel the power of attorney and agreement for compensation, and to appoint a receiver. It is true and it is not denied that in a proper case a court of equity has power to appoint a receiver. In the case before us there was a pending action, property within the jurisdiction, and an interest in the property on the part of the person applying. These jurisdictional facts appear on the bill. The question as to the necessity of a receiver in the particular case is not jurisdictional, for this must be decided by the court upon evidence. John K. Sumner was absent from this country and in California when the bill was filed, and he subsequently went to Tahiti where he has a residence and property interests, and he had left no person in this country authorized to care for his property other than the respondent in the original case, M. F. Crandell. The allegation in the bill of Sumner's mental unsoundness was valuable in order to show that the defendant Crandell had taken advantage of this condition in accomplishing the fraud. But it was also deemed essential in order to authorize the next friend to bring the suit, and a *prima facie* showing was made—sufficient

to authorize the issuance of the summons to Crandell. That the next friend can bring such a bill before an inquisition found by commissioners of lunacy is disputed by counsel for the writ. Story in 2d vol. of his Equity Jurisprudence, Sec. 1365, holds that "suits are sometimes entertained in the English courts of equity on behalf of persons of weak mind, brought by the next friend, where no commission of lunacy had been obtained, and decree made for protection of plaintiff's property, and liberty given to apply in lunacy as to its application." High on Receivers, Sec. 733, takes the same view, saying: "A receiver is sometimes necessary for the preservation of the estate of a lunatic, and while there are but few reported cases on the subject, the power of a court of equity to thus interfere is unquestioned." Beach on Receivers, Sec. 599, is to the same effect, and it cites several occasions when a receiver may be appointed over a lunatic's property.

Counsel for the writ review many of the English cases which show the exercise by chancery of the jurisdiction to appoint a receiver over the property of a lunatic before inquisition found, but they contend that there were other ingredients in the cases that gave the court jurisdiction, as, where there was a trust estate involved or upon some statutory ground. We do not deem it essential to discuss these cases, because in the case before us the court had jurisdiction in equity upon a bill to cancel instruments procured by fraud, and the appointment of a receiver was incidental or ancillary. Having the power to allow the petition for cancellation of the fraudulent instruments to be filed by the next friend, and the power to adjudicate the question as to the fraud and also the power to appoint a receiver, when deemed necessary, we find that the court had jurisdiction to appoint the receiver and we discharge the writ for prohibition on this ground. But, John K. Sumner returned to this jurisdiction January 7, 1897. If his friends considered him *non compos*, why did they not then proceed to have him put under guardianship? The receivership continued until October of 1897, when, by counsel, Sumner asked

for the discharge of the receiver. Why, if Sumner was *compos mentis* did he not ask Mr. J. A. King to turn the property over to him on his arrival here? It is asserted as the reason why he did not that he was of the belief that Mr. King was acting under a power of attorney which he (Sumner) had sent him from Tahiti. It does not appear that he made any inquiry to ascertain the true state of his affairs. Mr. Sumner's mental condition had been determined only upon an *ex parte* showing and without opportunity to Mr. Sumner to defend and only for the purposes of the original suit. The object of the receivership had been accomplished upon Mr. Sumner's return to this jurisdiction. The receiver should have been discharged and the property passed over to him.

We are of opinion that the receiver's accounts should have been settled and the receiver discharged when the motion therefor was made. The court had no authority to continue its jurisdiction. The pendency of a petition for the appointment of a guardian, filed as it was after the motion to discharge the receiver, should not have been considered by the court as a reason for continuing the receivership.

This is a proper matter for the exercise of the power of this court, under the statute, to forbid the Circuit Judge to proceed further in the case and the receiver to act further because this "collateral matter arising therein (the original case) is beyond the jurisdiction" of that court.

Of necessity the receiver's accounts must be settled by the court as incident to his discharge. This would not be continuing to act as receiver. Costs divided. Decree accordingly.

*A. S. Hartwell, G. D. Gear, A. S. Humphreys* and *Carl S. Smith* for the petitioner.

*Kinney & Ballou* for respondents.